**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DONNA R. EICHELBERGER, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 26-1365-BAH |
| WALMART INC., ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

# MEMORANDUM OPINION

Plaintiff Donna R. Eichelberger ("Plaintiff") originally brought this lawsuit against Walmart, Inc., and Walmart Store #2551 (collectively "Defendants" or "Walmart")[1] in the Circuit Court for Carroll County, Maryland, asserting claims arising from alleged discrimination throughout her employment with Defendants. *See* ECF 4 (complaint).[2] Defendants removed the case to federal court. *See* ECF 1 (notice of removal). Pending before the Court is Defendants' motion to dismiss, ECF 7, Plaintiff's motion to remand, ECF 11, and Plaintiff's motion for leave to amend her complaint, ECF 19.[3] Plaintiff filed a response in opposition to the motion to dismiss, ECF 13, and Defendants replied, ECF 18. Defendants also filed responses in opposition to each of Plaintiff's motions. ECF 17 (response to motion to

[1] Defendants contend that "[t]here is no separate business entity 'Walmart Store #2551.'" ECF 7, at 1 n.1 (motion to dismiss). Plaintiff does not contest that assertion. *See generally* ECF 13. The Court will accordingly dismiss "Walmart Store #2551" from this case.

[2] Although there is an "Amended Complaint" on the docket in this case, *see* ECF 12, the complaint at ECF 4 remains the operative complaint in this case because the "Amended Complaint" was filed outside the time permitted to amend as a matter of course, and without leave of the Court. *See infra* Section III.C.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

remand); ECF 20 (response to motion to amend). Plaintiff has not filed a reply and the time to do so has expired. *See* Loc. R. 105.2.a. (D. Md. 2025). The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the motion to dismiss is GRANTED, the motion to remand is DENIED, and the motion to amend is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background[4]

Plaintiff began working for "Walmart Inc. at Store #2551 in Carroll County" in July 2021 "in the role of front-end cashier and front-end Customer Service Desk." ECF 4, at 2 ¶ 8, at 3 ¶¶ 14–15. Plaintiff contends that during her employment at Walmart she "was subjected to harassment and hostile treatment from management and/or coworkers, including hostile treatment tied to sex and protected characteristics." *Id.* at 3 ¶ 17. This hostile treatment included being "treated differently than similarly situated employees" and being "scrutinized and targeted in ways that male employees were not." *Id.* at 4 ¶ 18.

Plaintiff then reported the alleged "discrimination, harassment, retaliation, and inappropriate conduct to Defendants, including reporting issues to management and utilizing company reporting mechanisms," and also "initiated formal complaint activity by submitting an inquiry/complaint to [the Maryland Commission on Civil Rights ('MCCR')]." *Id.* ¶¶ 20–21. However, Plaintiff contends that Defendants investigated her reports "with utter negligence and apparent apathy" by "ignoring emails, delaying responses, [failing to hold] personal and relevant interviews, allowing local store management to make final decisions in the matter, and making an investigation of the Plaintiff (rather than her potential harasser) with the help of four 'random' employees who may or may not have known [Plaintiff]." *Id.* at 7–8 ¶ 56.

[4] These facts come from the complaint and the Court therefore assumes them to be true for the purposes of a motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Following Plaintiff's "engage[ment] in protected activity" in the form of reporting the alleged hostile treatment, she contends that "Defendants retaliated against her" by subjecting her to "heightened scrutiny, unjustified discipline, false accusations, undermining Plaintiff's authority, and denial of opportunities." *Id.* at 4 ¶¶ 22–23. Plaintiff alleges that Defendants also "falsely accused Plaintiff of racism," determined that she was in need of "'coaching' on the grounds of her 'discrimination' of race, religion, and ethnicity," and placed a "'Code Orange' designation on her worker's profile."[5] *Id.* at 4 ¶ 24, at 9 ¶¶ 64, 67.

Plaintiff alleges that throughout her employment at Walmart, she "consistently met Defendants' expectations and was qualified for advancement." *Id.* at 3 ¶ 16. At some point,[6] Plaintiff "sought . . . advancement, including a People Lead position," a position for which Plaintiff contends that she "was qualified." *Id.* at 4 ¶ 27. Plaintiff did not receive the People Lead position, and contends that "Defendants treated Plaintiff less favorably than similarly situated employees who did not engage in protected activity and/or who were not members of

---

[5] The complaint does not explain what a "Code Orange" designation is. *See generally* ECF 4. While adjudication of the motion to dismiss is limited to the allegations in the operative complaint, the Court notes that in Plaintiff's proposed amended complaint she explains that "Code Orange is an internal Walmart disciplinary designation that would disqualify an associate from promotions for twelve (12) months and would remain on the worker profile, branding the associate as having engaged in racial discrimination." ECF 19-1, at 7 ¶ 35. Moreover, Plaintiff alleges in her proposed amended complaint that, while she was told that she had been "coded Orange," she was never actually subject to a formal Code Orange designation. *Id.* ¶ 36. These additional allegations are provided for context and do not alter the Court's analysis of the motion to dismiss.

[6] The complaint does not allege when Plaintiff sought the "People Lead" position. *See generally* ECF 4. However, it appears that Plaintiff may have sought the position following the end of her employment with Walmart, since the allegations regarding this application are located in a subsection entitled "Denial of Advancement and Refusal to *Hire or Rehire* into 'People Lead' Role." *Id.* at 4 (emphasis added). The exact timing of these events is unclear, as this section of the complaint precedes the section entitled "Constructive Discharge." *Id.* at 5. Plaintiff's MCCR Charge of Discrimination, which Defendants appended to their motion to dismiss, explains that Plaintiff sought the People Lead position "on or about September 12, 2024," *after* she had previously left Walmart "on or about April 11, 2024." ECF 7-3, at 2. The Court provides this additional information for clarity and context, but it does not alter the Court's analysis of the motion to dismiss.

Plaintiff's protected class." *Id.* at 4–5 ¶¶ 28–29. Plaintiff alleges that Defendants' conduct "made Plaintiff's working conditions intolerable," thereby "forc[ing] [Plaintiff] to resign from her employment," and "constitut[ing] a constructive discharge." *Id.* at 5 ¶¶ 31–33. "Plaintiff had 2.5 years of service when constructively discharged."[7] *Id.* at 1 ¶ 2.

Plaintiff brings seven counts under Maryland statutory and common law: Count I, Hostile Work Environment—Sexual Discrimination; Count II, Retaliation; Count III, Refusal to Hire or Promote by Discrimination; Count IV, Negligence; Count V, Negligent Oversight of Personnel; Count VI, Defamation; Count VII, False Light. *Id.* at 5–10 ¶¶ 37–70. Plaintiff seeks, among other remedies, compensatory damages, punitive damages "where permitted," and injunctive relief "requiring Defendants to cease discriminatory practices, expunge false and retaliatory designations and records, and implement lawful anti-retaliation measures." *Id.* at 10–11.

### B. Procedural History

Plaintiff filed suit in the Circuit Court for Carroll County, Maryland, on March 6, 2026, and effected service of process on Walmart on March 9, 2026. ECF 1, at 1 ¶¶ 1–2. Defendants removed the case on April 8, 2026, invoking the Court's diversity jurisdiction. *Id.* at 2 ¶ 6. On April 15, 2026, Defendants filed a motion to dismiss. ECF 7. Prior to responding to Defendants' motion, on May 13, 2026, Plaintiff filed a motion to remand the action to state court. ECF 11. Plaintiff then responded to the motion to dismiss on May 15, 2026. ECF 13. Defendants filed a response in opposition to the motion to remand, ECF 17, and a reply in

---

[7] Plaintiff does not provide the exact date of her resignation, but given her alleged start date in July 2021, the Court observes that her end date two-and-a-half years later would fall in approximately January 2024. The motion to dismiss identifies her date of resignation as April 11, 2024, and Plaintiff does not contest that timeline. *See* ECF 7-2, at 11 (citing Plaintiff's Charge of Discrimination filed with the MCCR); *see also* ECF 13, at 13 (Plaintiff's response in opposition to the motion to dismiss) (referring to Plaintiff's "resignation date of April 11, 2024"). This additional information is provided for context and clarity and does not alter the Court's analysis of the motion to dismiss.

support of their motion to dismiss, ECF 18. Plaintiff then filed a motion for leave to amend the complaint, ECF 19, to which Defendants responded, ECF 20.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### B. Federal Rule of Civil Procedure 15(a)

Under Rule 15 of the Federal Rules of Civil Procedure, courts are to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to

test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons that justify denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* The Fourth Circuit has explicitly directed trial courts "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Ultimately, the decision to grant or deny leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006).

"There is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion." *Aura Light US Inc. v. LTF Int'l LLC*, Civ. Nos. GLR-15-3198, GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017) (citing *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). "Yet the Court need not apply the Rule 12(b)(6) standard when determining whether leave to amend would be futile." *Id.* Instead, the Court applies a "much less demanding standard." *Id.* "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

**C. Motion to Remand**

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Federal courts may exercise diversity jurisdiction when there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Diversity jurisdiction is determined as of the date the suit is filed, 'regardless of later changes in originally crucial facts such as . . . the amount in controversy.'" *Hernandez v. Carlson Holdings Inc.*, Civ. No. RDG-10-00539, 2010 WL 4181455, at *1 (D. Md. Oct. 22, 2010)

(quoting *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255–56 (4th Cir. 2002)). Indeed, "it is black-letter law that the conditions that create diversity jurisdiction . . . need *not* survive through the life of the litigation." *Porsche Cars N. Am., Inc.*, 302 F.3d at 255 (emphasis in original).

"If subject matter jurisdiction is lacking, the court must dismiss the action, whether sua sponte or upon the motion of a party." *Maddox Indus. Transformer, LLC v. CS Energy, LLC*, Civ. No. 7:23-5989-HMH, 2024 WL 38742, at *1 (D.S.C. Jan. 3, 2024) (citing *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 219 (4th Cir. 2001)); *see also Morales v. Richardson*, 841 F. Supp. 2d 908, 913 (D. Md. 2012) (noting that "the lack of subject matter jurisdiction may be noticed by the district court *sua sponte* or by any party" and "the court may enter a remand order *sua sponte* based on a lack of subject matter jurisdiction" (citing *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008)).

## III. ANALYSIS

The pending motions overlap in many regards. For instance, if the motion to amend were granted in full, the amended complaint would become the operative complaint, rendering the present motion to dismiss moot.[8] However, because the proposed amended complaint makes only limited changes to the substance of the pleadings—adding one new defendant and one new cause of action, and otherwise asserting the same claims Plaintiff raised in the original complaint, *see* ECF 19-1—and because Defendants raise many of the same arguments against amendment as they do in favor of dismissal, *compare* ECF 7-2, at 13–26, *with* ECF 20, at 17–24, the Court finds it most expedient to first consider the merits of the motion to dismiss and then determine which counts Plaintiff may seek to save through amendment.

[8] Additionally, if the motion to remand were granted, there would be no need to evaluate the complaint under federal pleading standards, as the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires. However, the motion to remand will be denied, so the Court considers each of the pending motions in turn.

**A. Motion to Dismiss**

1. Maryland Fair Employment Practices Act Claims (Counts I–III)

Plaintiff brings three claims under the Maryland Fair Employment Practices Act (MFEPA), Md. Code Ann. State Gov't §§ 20-601 et seq. *See* ECF 4, at 5–7 ¶¶ 37–53. Defendants argue first that Counts II and III are time-barred. ECF 7-2, at 15. Defendants then argue in the alternative that each of these counts fails to state a claim upon which relief may be granted. ECF 7-2, at 13, 16, 20; ECF 18, at 8. Plaintiff responds that dismissal for untimeliness at the motion to dismiss stage would be premature, and that each claim is supported by adequate allegations to satisfy the pleading standards at Rule 12(b)(6). ECF 13, at 9–18.

"[A] defense based on the statute of limitations" typically "must be raised by the defendant through an affirmative defense," which the defendant bears the burden of establishing. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citing Fed. R. Civ. P. 8(c)). "It follows, therefore, that a motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.* Only under "rare circumstances" may this defense be reached through a Rule 12(b)(6) motion to dismiss, and only "if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis omitted)).

Plaintiff contends that "the [c]omplaint does not provide the level of date specificity that would allow the Court to conclude, as a matter of law and on the face of the pleadings alone, that these claims are untimely." ECF 13, at 13. The Court agrees. The dates Defendants rely on in their untimeliness analysis do not appear on the face of the complaint which, aside from providing the month and year of Plaintiff's start date and alleging that she was constructively discharged after 2.5 years of service, *see* ECF 4, at 1 ¶ 2, at 3 ¶ 14, is devoid of

specific factual allegations providing the date or timing of the events underlying Plaintiff's claims. *See generally* ECF 4; *see also* ECF 7-2, at 15 (calculating the timeliness of Plaintiff's filing based on her resignation date, the date she applied for the People Lead position, and the date she filed her MCCR report, none of which appear in the complaint); *Harden v. Budget Rent A Car System, Inc.*, 726 F. Supp. 3d 415, 428 (D. Md. 2024) (explaining that in order to consider a timeliness argument raised in a motion to dismiss "it must be clear on the face of the [complaint] that the limitations period has run. . . . [The complaint] must contain sufficient facts, namely the date in which the causes of action accrue, for the Court to ascertain whether Plaintiff's claims are barred by the statute of limitations" (citing *Goodman*, 494 F.3d at 464)). The claims therefore may not be dismissed as untimely.

*a. Plaintiff Has Failed to State a Claim for Hostile Work Environment (Count I)*

Plaintiff's first claim alleges a hostile work environment in violation of MFEPA. ECF 4, at 5–6 ¶¶ 37–42. MFEPA is "the state analogue of Title VII." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 498 n.2 (D. Md. 2019) (quoting *Alexander v. Marriott Int'l, Inc.*, Civ. No. RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011)). "Because of this, Maryland courts 'traditionally seek guidance from federal cases in interpreting' MFEPA." *Hammond-Thompson v. Temple View Capital*, Civ. No. ABA-23-1502, 2026 WL 850510, at *11 (D. Md. Mar. 27, 2026) (quoting *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)); *see also Watrous v. AIRtec, Inc.*, Civ. No. TJS-24-2076, 2025 WL 2494324, at *10 (D. Md. Aug. 28, 2025) ("Because the MFEPA is 'modeled on federal anti-discrimination legislation,' Maryland courts largely apply federal precedent to employment discrimination claims brought under the MFEPA." (quoting *Doe v. Catholic Relief Servs.*, 300 A.3d 116, 126 (Md. 2023))). To state a claim for hostile work environment based on sexual discrimination under Title VII, a plaintiff must allege facts sufficient to establish:

> (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's

> conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.

*DeWitt v. Mecklenburg Cnty.*, 73 F. Supp. 2d 589, 600–01 (W.D.N.C. 1999) (citing *Spicer v. Commonwealth of Va., Dep't of Corr.*, 66 F.3d 705, 709–10 (4th Cir. 1995)). The standards under the MFEPA and Title VII are not identical—for instance, "to bring a harassment or hostile work environment claim under the MFEPA, it is sufficient to prove that the conduct creates an objectively abusive or hostile work environment" since "the MFEPA was amended to clarify that harassment need not be severe or pervasive in all circumstances to be actionable." *Watrous*, 2025 WL 2494324, at *10 (citing Md. Code Ann. State Gov't § 20-601(h)). However, "[t]he elements of a harassment or hostile work environment claim under the MFEPA are otherwise the same as those under Title VII." *Id.*

Plaintiff has provided little more than conclusory assertions in support of this claim. She contends that she was "subjected to harassment and hostile treatment from management and/or coworkers, including hostile treatment tied to sex and protected characteristics," because she "was treated differently than similarly situated employees and was scrutinized and targeted in ways that male employees were not." ECF 4, at 3–4 ¶¶ 17–18. However, she does not allege the particular ways in which Defendants treated her differently than similarly situated male employees, nor does she describe the treatment she suffered beyond the conclusory labels of "harassment and hostile treatment." *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage."); *Garnes v. Maryland*, Civ. No. RDB-17-1430, 2018 WL 276425, at *8 (D. Md. Jan 3, 2018) (finding that plaintiff's "conclusory allegations" that the "'work place was very stressful and hostile,'" certain coworkers "exhibited 'aggressive behaviors' and 'ridiculed' [p]laintiff, and 'the hostile work environment began again'" were "insufficient to support a hostile work environment claim"). In the absence of

supporting factual allegations, Plaintiff's conclusory assertions are insufficient to "prove that the [alleged] conduct create[d] an objectively abusive or hostile work environment," as required under the MFEPA. *Watrous*, 2025 WL 2494324, at *10. The hostile work environment claim must therefore be dismissed.

*b. Plaintiff Has Failed to State a Claim for Retaliation (Count II)*

Because MFEPA is the state-law analogue to Title VII, *Brennan*, 361 F. Supp. 3d at 498 n.2, "[c]ourts apply Title VII precedent . . . to discrimination, retaliation, and harassment claims brought under the MFEPA," *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 211 (D. Md. 2025) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). "To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove '(1) that she engaged in a protected activity,' . . . '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (citing *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). And "while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted) (first citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), then quoting *Twombly*, 550 U.S. at 555)); *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). As part of this analysis, "reference to the elements of a Title VII claim is helpful to gauge the sufficiency of the allegations." *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 734 (D. Md. 2023).

Plaintiff alleges that she suffered "materially adverse employment actions" following her reports of the alleged hostile work environment in the form of "denying opportunities, increasing scrutiny, stigmatizing Plaintiff, and creating intolerable working conditions." ECF

4, at 6 ¶ 45. Defendants argue that Plaintiff's claim fails on the causation prong because "Plaintiff fails to allege sufficient facts to state causation through either temporal proximity or facts showing retaliatory animus." ECF 7-2, at 17. The causation prong requires a plaintiff to "show that his employer 'took the adverse action because of the protected activity.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (emphasis omitted) (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." *Id.* (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783–84 (4th Cir. 2021)). "A plaintiff may establish the existence of facts that 'suggest[ ] that the adverse action occurred because of the protected activity.'" *Id.* (alteration in original) (quoting *Johnson*, 839 F. App'x at 784). "A plaintiff may also establish that 'the adverse act bears sufficient temporal proximity to the protected activity.'" *Id.* (quoting *Johnson*, 839 F. App'x at 784). "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." *Id.*

Plaintiff has alleged no facts in support of either pathway to satisfying the causation prong as her complaint contains only legal conclusions on this point. *See* ECF 4, at 6 ¶¶ 46–47 ("There is a causal connection between Plaintiff's protected activity and Defendants' adverse actions. Defendants' retaliation was a substantial motivating factor in their actions toward Plaintiff."). As Plaintiff noted in her argument against the viability of an untimeliness defense at this stage in the case, the complaint does not provide any measure of "date specificity." ECF 13, at 13. In the absence of any allegations as to when Plaintiff reported the alleged harassment and when she began to experience the alleged retaliatory conduct, the Court cannot draw an inference of causation based on temporal proximity. *See Stewart v. Hegseth*, 800 F. Supp. 3d 662, 679 (W.D. Va. 2025) (determining that a plaintiff could not prove causation based on temporal proximity where "[m]any of [his] allegations contain[ed] no dates

at all" and the dates provided fell "beyond the narrow scope for temporal proximity enumerated by the Fourth Circuit" (citing *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

Additionally, Plaintiff's allegations do not establish causation through the alternate method of "facts showing retaliatory animus." *Stewart*, 800 F. Supp. 3d at 679 (citing *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)). As the Court noted above, Plaintiff's allegations regarding causation consist solely of unadorned legal conclusions. *See MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 112 (4th Cir. 2025) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to survive a motion to dismiss." (quoting *Iqbal*, 556 U.S. at 678)). To meet their burden of showing that "the employer took the adverse employment action '*because* the plaintiff engaged in a protected activity'" a plaintiff must "provide evidence"—or, at the motion to dismiss stage, nonconclusory allegations—"that the employer knew about the protected activity." *Wright v. Southwest Airlines Co.*, Civ. No. CCB-06-3020, 2008 WL 4104180 (D. Md. Aug. 21, 2008) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (emphasis in *Holland*)); *see also Seabrook v. Driscoll*, 148 F.4th 264, 272–73 (4th Cir. 2025) (finding that the adverse acts "could not have been retaliatory" when the "retaliatory individuals" were not aware of the protected activity and quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) for the proposition that "[b]y definition, an employer cannot take action because of a factor of which it is unaware"). Here, Plaintiff has not alleged the identity of her harassers, to whom she reported the alleged harassment, or the identity of those who retaliated against her. *See generally* ECF 4. She therefore has not pled facts establishing that her alleged retaliators were aware of her prior reports of harassment. The retaliation claim must accordingly be dismissed.

c. *Plaintiff Has Failed to State a Claim for Failure to Hire or Promote Through Discrimination (Count III)*

Plaintiff brings a claim for failure to hire or promote through discrimination in Count III. ECF 4, at 7 ¶¶ 49–53. Setting forth a prima facie case of discrimination in hiring requires a plaintiff to show that:

> (i) [the plaintiff] belongs to a protected class, (ii) [the plaintiff] applied and was qualified for a job for which the employer was seeking applicants, (iii) despite [the plaintiff's] qualifications, [the plaintiff] was rejected, and (iv) after [the plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications.

*EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 851 n.2 (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Defendants argue that Plaintiff has failed to establish any of the required elements of a discrimination in hiring claim. ECF 7-2, at 21. Plaintiff argues to the contrary, contending that the complaint adequately pleads each element of the claim.[9] ECF 13, at 16–18. Reading the complaint in the light most favorable to Plaintiff, as the Court is required to do at this stage, the Court finds that the complaint satisfies the first three elements of this claim. It is true that despite resting her claim on these protected classes, Plaintiff has not directly pled her sex, race, or age. *See generally* ECF 4. However, Plaintiff's complaint includes her name and the use of personal pronouns that support a reasonable inference regarding her sex and is therefore adequate at the motion to dismiss stage. *See* ECF 4, at 1 ("Plaintiff Donna R. Eichelberger . . . by and through her attorney . . ." (capitalization altered)); *see also* Md. Code Ann. State Gov't

[9] The Court notes that in the course of this argument, Plaintiff relies on facts that do not appear in the operative complaint. *Compare* ECF 13, at 17 (contending that Plaintiff alleged "that the person selected for the role was younger and less experienced than her"), *with* ECF 4 (containing no allegations as to who ultimately received the People Lead role).

§ 20-606(a)(1)(i) (naming sex as a protected characteristic). Plaintiff has alleged, albeit indirectly, that she applied for the People Lead position. *See* ECF 4, at 4 ¶ 27 ("Plaintiff sought and was qualified for advancement, including a People Lead position."). Plaintiff alleged that she was qualified for this position based on her term of service at Walmart and the fact that she "consistently met Defendants' expectations" in the course of her employment.[10] *Id.* at 1 ¶ 2. And Plaintiff alleged that Defendants "refused to place Plaintiff in the People Lead role," which gives rise to a reasonable inference that Plaintiff's application was rejected. *Id.* at 4 ¶ 28.

However, the complaint falls short on the fourth element as Plaintiff has not alleged whether the position remained open following her unsuccessful application, nor has she alleged who ultimately received the role. *See generally* ECF 4; *see also Sears Robuck & Co.*, 243 F.3d at 851 (finding that a Hispanic plaintiff satisfied the fourth element by showing that after he was rejected from a role, "the position remained open, Sears continued to seek to fill it, and did shortly fill it by hiring a less qualified Caucasian woman"). Aside from Plaintiff's conclusory assertions that Defendants "treated Plaintiff less favorably than similarly situated employees who did not engage in protected activity and/or who were not members of Plaintiff's protected class," ECF 4, at 5 ¶ 29, she has not pled any facts demonstrating that she did not receive the People Lead role "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253; *see also Sewell v. Westat*, Civ. No. RWT-16-0158, 2016 WL 6600533, at *3 (D. Md. Nov. 8, 2016) (finding that a plaintiff failed to state a claim as to the fourth element where "[s]he put[] forth only conclusory allegations that [d]efendant failed to hire her 'for opportunities that she [was qualified] for because she is an African American female'" and noting that a "[p]laintiff's 'subjective belief of discrimination, however

---

[10] Plaintiff contends that she satisfied this element in part because she pled that she had 2.5 years of experience at the time she sought the People Lead role. ECF 13, at 17. However, the complaint is silent as to when Plaintiff applied for this role, so the Court cannot infer her qualifications based on how long she had worked at Walmart at that time. *See generally* ECF 4.

genuine, [cannot] be the basis of judicial relief'" (quoting *Parker v. Ciena Corporation*, Civ. No. WDQ-14-4036, 2016 WL 153035, at *5 (D. Md. Jan. 12, 2016) (cleaned up) (alterations within internal quotations in *Sewell*))).

2. <u>Negligence Claims (Counts IV–V)</u>

Count IV asserts a negligence claim against Defendants, and Count V brings a negligent oversight of personnel claim. ECF 4, at 7–8 ¶¶ 54–61. Since Plaintiff names only the business entities of Walmart, Inc., and Walmart Store #2551 as defendants, "[i]t is unclear how these two claims differ, so they will be analyzed as asserting a single claim of negligent hiring, retention, training, and supervision." *Crumb v. McDonald's Corp.*, Civ. No. DKC-15-1719, 2016 WL 759213, at *7 (D. Md. Feb. 26, 2016). A claim for negligent supervision requires a plaintiff to show that:

> [1] her injury was caused by the tortious conduct of a coworker, [2] that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, [3] that the employer failed to use proper care in selecting, supervising or retaining that employee, and [4] that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

*Bryant v. Better Bus. Bureau of Greater Md.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)).

Defendants argue that "Plaintiff fails to allege facts that sufficiently show that [Defendants] owed her and subsequently breached a legally cognizable duty," contending that she instead seeks to rest Defendants' duty of care on the obligations imposed by the MFEPA, thereby rendering her negligence claims duplicative of her MFEPA claims. ECF 7-2, at 22. Plaintiff responds that her negligence claims are not based "on the bare fact of discrimination," but rather on Defendants' alleged "negligent handling of its own internal complaint investigation process." ECF 13, at 19. However, the complaint specifically alleges that Defendants had a "duty to follow [f]ederal and [s]tate [l]aw regarding discrimination,

harassment, and other workplace illegalities," and is devoid of any allegations regarding Defendants' internal complaint investigation process. ECF 4, at 7 ¶ 55.

"This Court has noted that negligent supervision claims 'existed at common law' in Maryland and therefore 'may only be predicated on common law causes of action.'" *Braxton v. Domino's Pizza LLC*, Civ. No. RDB-06-1191, 2006 WL 3780894, at *4 (D. Md. Dec. 21, 2006) (quoting *Demby v. Preston Trucking Co., Inc.*, 961 F. Supp. 873, 881–82 (D. Md. 1997)); *see also Crumb*, 2016 WL 759213, at *7 (dismissing negligent supervision claim because "the harm [p]laintiff alleges is not a violation of common law, but rather a statutory violation"). "Because no common law tort of employment discrimination exists in Maryland, this Court has repeatedly disallowed negligent supervision claims appended to Title VII cases." *See Greenan v. Bd. of Educ. of Worcester Cnty.*, 783 F. Supp. 2d 782, 791–92 (D. Md. 2011) (collecting cases). Here Plaintiff has not alleged tortious conduct that is distinct from Defendants' alleged MFEPA violations.[11] Her negligence claims must therefore be dismissed.

3. Defamation and False Light Claims (Counts VI–VII)

Plaintiff asserts claims for defamation (Count VI) and false light (Count VII), contending that "Defendants erroneously claimed that Ms. Eichelberger is a racist and acted from racism during her time at Walmart." ECF 4, at 9 ¶ 64. To state a claim for defamation under Maryland law, a Plaintiff must allege: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 966

[11] To the extent Plaintiff bases these negligence claims on Defendants' alleged defamation of her, *see* ECF 4, at 8 ¶ 57, because the Court finds that Plaintiff has failed to state a claim for defamation, *see infra* Section III.A.3, that claim cannot form the basis of her negligent supervision claim.

A.2d 432, 448 (Md 2009) (internal quotations omitted)). False light requires a showing of the same legal standard. *Id.* at 1146–47.

Defendants first argue that these claims are time-barred by the applicable one year statute of limitations. ECF 7-2, at 23. Plaintiff responds that her claims are timely both because the "Code Orange" designation constitutes a "continuing, written, institutionalized false statement that persists in the employer's records" beyond the end of Plaintiff's employment with Defendants and because the complaint alleges that the defamatory statements "occurred within a year of the filing of this complaint with the MCCR."[12] ECF 13, at 20–21. As the Court explained *supra*, at Section III.A.1, timeliness arguments are rarely appropriate at the motion to dismiss stage. *See Goodman*, 494 F.3d at 464. The basis of a statute of limitations defense must appear "clearly . . . on the face of the complaint." *Id.* (emphasis omitted) (citations omitted). Defendants' argument rests on the proposition that the alleged defamation occurred during Plaintiff's employment, which ended approximately 2.5 years after it started in July 2021, meaning the defamation must have occurred more than a year prior to Plaintiff's initiation of the present suit on March 6, 2026. *See* ECF 4, at 1 ¶ 2; ECF 1, at 1 ¶ 1. Defendant contends that "Plaintiff's own [c]omplaint alleges [Defendants] made the statement at issue 'during her time at Walmart[.]'" ECF 18, at 17 (quoting ECF 4, at 9 ¶ 64). However, the sentence Defendants quote in support of this argument states in full that "Defendants erroneously claimed that Ms. Eichelberger is a racist and acted from racism during her time at Walmart." ECF 4, at 9 ¶ 64. The sentence could be fairly read to mean either that the defamatory statements occurred during Plaintiff's time working for Defendants, or that

[12] Since Plaintiff did not allege the date of the MCCR complaint, *see generally* ECF 4, that argument does nothing to support Plaintiff's assertion that she filed *this* complaint within one year of the alleged defamatory statements. And although Plaintiff asserts that the complaint "alleges that the Code Orange designation was placed on her *permanent* worker profile," *see* ECF 13, at 20 (emphasis in original), the allegation that the Code Orange designation was permanent in any way is absent from her complaint, *see generally* ECF 4.

Defendants claimed that her racist acts occurred during the course of her employment—claims that, under that reading, could have been made at any time. Because of that ambiguity, this defense, disfavored at the motion to dismiss stage, does not warrant dismissal. *See Harden*, 726 F. Supp. 3d at 428.

Defendants argue in the alternative that Plaintiff has failed to state a claim for defamation or false light. ECF 7-2, at 24. Defendants contend that any communications they made regarding Plaintiff are "protected by a qualified privilege under Maryland law." *Id.* The Supreme Court of Maryland "has recognized a qualified privilege 'to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others.'" *Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC*, Civ. No. ELH-17-3420, 2019 WL 1441812, at *22 (D. Md. Mar. 31, 2019) (quoting *Gohari v. Darvish*, 767 A.2d 321, 329 (Md. 2001)). "[C]ommunications arising out of the employer-employee relationship clearly enjoy a qualified privilege." *Groom v. Bombardier Transp. Servs. USA Corp.*, Civ. No. MJG-16-2624, 2017 WL 4947014, at *6 (D. Md. Oct. 31, 2017) (quoting *Gohari*, 767 A.2d at 328 (internal quotations omitted)). "Once a conditional privilege has been identified, a plaintiff's defamation claim will only survive if he can show that the defendant acted with malice, 'defined as a person's actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement.'" *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) (alteration in original) (cleaned up) (quoting *Piscatelli*, 35 A.3d at 1148).

Plaintiff responds that such a privilege is an affirmative defense ill-suited for a motion to dismiss, and that in any event she has pled facts sufficient to support an inference of actual malice on the part of Defendants. ECF 13, at 22–23. However, Plaintiff has not cited any case law in support of her contention that Defendants' qualified privilege argument may not be considered at the motion to dismiss stage. *See id.*; *see also Groom*, 2017 WL 4947014, at *9

(considering the merits of a qualified privilege argument raised in a motion for judgment on the pleadings); *Salisbury Univ.*, 123 F. Supp. 3d at 758–59 (opining at the motion to dismiss stage that certain statements were likely protected by a qualified privilege). The Court will therefore address Defendants' qualified privilege argument.

Defendants argue that their statements about Plaintiff are protected as those "arising out of the employer-employee relationship." *Groom*, 2017 WL 4947014, at *6 (citations omitted). The Court agrees that the alleged defamation arises from Plaintiff's employee relationship with Defendants and therefore falls within this category of qualified privilege. The alleged defamation appears to arise from an at-work incident involving Plaintiff that caused Defendants to believe Plaintiff required "'coaching' on the grounds of her 'discrimination' of race, religion, and ethnicity." ECF 4, at 9–10 ¶¶ 67–69. Moreover, Plaintiff contends that the defamation "destroyed Plaintiff's employment and character among fellow coworkers." *Id.* at 10 ¶ 70. Plaintiff cannot sidestep this privilege by asserting that Defendants acted with malice—such an argument would require facts showing actual knowledge of the falsity of the statements *and* an intent to deceive, which are absent from the complaint. *Salisbury Univ.*, 123 F. Supp. 3d at 758 (citations omitted). Plaintiff contends that she made this showing by pleading facts demonstrating that "Defendants made a false statement without adequate investigation and in disregard of whether it was true or not." ECF 13, at 23. However, these allegations fail to establish that Defendants acted with *knowledge* that the statements were false. *See Edwards v. Am. Med. Ass'n, Inc.*, Civ. No. GLR-22-3297, 2023 WL 5880284, at *5 (D. Md. Sep. 11, 2023) (dismissing a defamation claim under 12(b)(6) pleading standards because although "malice is usually a question for the fact-finder, it need not be submitted to the fact-finder when the plaintiff fails to allege or prove facts that would support a finding of malice" (quoting *Piscatelli*, 35 A.3d at 1148)).

Dismissal is further warranted because Plaintiff has failed to plead the alleged defamatory statements with specificity, alleging only that "Defendants erroneously claimed that [Plaintiff] is a racist and acted from racism during her time at Walmart," and that they also placed a "Code Orange" designation on her file, without explaining what "Code Orange" signifies. ECF 4, at 9 ¶ 64. "To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement." *Salisbury Univ.*, 123 F. Supp. 3d at 757 (citing *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision)). Plaintiff's generalized assertions therefore cannot support a claim for defamation. *See Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) ("Every alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" (quoting *English Boiler*, 1999 WL 89125, at *3)); *Brown v. Ferguson Enters., Inc.*, Civ. No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (finding that a plaintiff's allegations could not plausibly support a claim for defamation where they "contain[ed] no specific description of the content of the alleged statements, nor when and how they were communicated"). Plaintiff's defamation and false light claims will therefore be dismissed.

**B. Motion to Amend**

Having determined that each of Plaintiff's claims, as currently pled, is subject to dismissal under Rule 12(b)(6), the Court now turns to Plaintiff's motion for leave to amend. The Court first considers whether Plaintiff may be permitted to join a nondiverse defendant and then addresses whether the proposed amendments are futile. Because the Court detects no prejudice to Defendants at this early stage in the case, and because this is Plaintiff's first attempt to amend, the Court will permit amendment as to any non-futile claims.

1. Attempted Joinder of Nondiverse Defendant

Plaintiff seeks, in her proposed amended complaint ("PAC"), to name an additional defendant whose joinder, if permitted, would destroy complete diversity of citizenship. *See* ECF 19-1, at 2 ¶ 4, at 3 ¶¶ 12, 15 (PAC) (naming as a defendant store manager "Josh Fazenbaker [who] is, upon information and belief, an adult individual domiciled in Maryland and a citizen of Maryland" and identifying Plaintiff as a citizen of Maryland).

"Although Federal Civil Rule 15(a)(2) instructs courts to grant a party leave to amend a pleading 'freely' and 'when justice so requires,' courts must proceed with greater caution when the amended pleading would destroy complete diversity." *Liverpool v. Caesars Balt. Mgmt. Co.*, Civ. No. JKB-21-0510, 2021 WL 5909718, at *2 (D. Md. Dec. 14, 2021) (quoting Fed. R. Civ. P. 15(a)(2)). When a plaintiff seeks to join a nondiverse defendant following removal, the Court may either "deny joinder, or permit joinder and remand the action" to state court. 28 U.S.C. § 1447(e). "This decision is 'committed to the sound discretion of the district court,' and remand is automatic once joinder is granted." *Liverpool*, 2021 WL 5909718, at *2 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999)). In exercising this discretion, district courts may consider "all relevant factors, including: 'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.'" *Mayes*, 198 F.3d at 462 (quoting *Gum v. Gen. Electric Co.*, 5 F. Supp. 2d 412, 414 (S.D. W. Va. 1998)). Courts must "carefully scrutinize" a plaintiff's attempt to add a nondiverse defendant following removal, "[e]specially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place." *Id.* at 463. This discretionary decision further requires Courts to weigh "the diverse defendant['s] . . . interest in keeping the action in federal court," *Coley v. Dragon Ltd.*, 138 F.R.D. 460, 465 (E.D. Va. 1990), against "the possibility that

retaining jurisdiction might cause 'parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources,'" *Liverpool*, 2021 WL 5909718, at *2 (quoting *Mayes*, 198 F.3d at 463).

Plaintiff's attempted joinder here clearly evinces "the specific purpose of avoiding federal jurisdiction." *Mayes*, 198 F.3d at 463. Her PAC not only seeks to add a nondiverse defendant—it also specifically caps "her total aggregate monetary recovery against all Defendants collectively to $74,000," just $1,000 below the amount-in-controversy threshold for diversity jurisdiction. ECF 19-1, at 9 ¶ 53; 28 U.S.C. § 1332(a). Moreover, before Plaintiff filed the motion for leave to amend, she filed a motion to remand the action to state court, further raising the inference that she seeks the present joinder solely to divest the court of jurisdiction. *See* ECF 11. Plaintiff contends that the proposed additional defendant, Josh Fazenbaker ("Fazenbaker"), committed "conduct [that is] is central to the controversy, and denying amendment would risk piecemeal litigation." ECF 19, at 5. However, it is unclear that any of Plaintiff's proposed amended claims could stand against Fazenbaker alone, rendering this risk low. *See McCallister v. Citi Mortg., Inc.*, Civ. No. JKB-21-1639, 2021 WL 5360438, at *4 (D. Md. Nov. 17, 2021) (noting that "if a plaintiff has no hope of recovery against the defendant that is sought to be joined, it is more likely that the plaintiff in question only seeks to name the non-diverse defendant to attain remand"); *see also Brown v. Balt. Police Dep't*, Civ. No. RDB-11-0136, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011) (determining that "[b]ecause supervisors cannot be liable in their individual capacities under Title VII, this Court finds that supervisors cannot be individually liable under the [M]FEPA" (citations omitted) (citing *Lissau v. Southern Food. Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998))); *see*

*infra* Section III.B.2 (determining that amendment as to proposed Counts VII–VIII would be futile).[13] The Court therefore declines to permit joinder of Fazenbaker.

2. Futility of Amendment[14]

When determining whether a proposed amendment should be denied as futile, courts apply a "much less demanding standard" than that laid out in Rule 12(b)(6), *Aura Light US Inc.*, 2017 WL 2506127, at *5, denying leave to amend on this basis only if "the proposed amendment is clearly insufficient or frivolous on its face," *Johnson*, 785 F.2d at 510.

*a. Amendment of The Hostile Work Environment Claim Would be Futile (PAC Count I)*

The Court determined that dismissal of Plaintiff's hostile work environment claim was warranted because the original complaint failed to provide nonconclusory allegations regarding the conduct that allegedly rendered her workplace hostile. *See supra* Section III.A.1.a. The PAC does not cure those deficiencies—Plaintiff's allegations in support of her hostile work environment claim remain conclusory and nonspecific. *See* ECF 19-1, at 5 ¶ 23 (alleging that "Plaintiff was subjected to harassment and hostile treatment from management and/or coworkers, including hostile treatment tied to sex and protected characteristics" without

---

[13] If Plaintiff seeks to proceed against Fazenbaker on her Tortious Interference With Employment Relations claim (PAC Count VI) in state court, the Court observes that success on this claim would require a showing that Fazenbaker acted outside his agency relationship with Defendants when doing so, such that the risk of "parallel lawsuits" with "inconsistent results" is low. *See Liverpool*, 2021 WL 5909718, at *2 (citations omitted); *see also Marrs v. Marriott Corp.*, 830 F. Supp. 274, 282–83 (D. Md. 1992) (requiring a showing that the defendant supervisor acted outside the scope of their role, such that they were "motivated by personal revenge" to establish a tortious interference with employment relationship claim).

[14] The Court notes that Defendants also argue that amendment should not be permitted on the basis of Plaintiff's failure to comply with the relevant procedural rules, which Defendants characterize as "part of a continuing pattern of Plaintiff's disregard for the procedural requirements under the Federal Rules and the Local Rules of this Court." ECF 20, at 9–10 (describing Plaintiff's various rule violations). While the Court declines to find bad faith on this basis, Plaintiff is reminded of her obligation to comply with the relevant procedural rules going forward.

providing nonconclusory examples of such conduct); *see also Bass*, 324 F.3d at 765; *Garnes*, 2018 WL 276425, at *8. Leave to amend this count is accordingly denied.

*b. Plaintiff Is Permitted to Amend Her Retaliation Claim (PAC Count II)*

The Court rested its dismissal of Plaintiff's retaliation claim in part on its finding that Plaintiff had not pled facts showing that her alleged retaliators were aware of her protected activity. *See supra* Section III.A.1.b. Plaintiff's PAC contains the new detail of the identity of the person to whom Plaintiff reported the alleged harassment—Coach John Schia, a member of her store's management team, as well as the identity of at least one of her alleged retaliators, Fazenbaker. ECF 19-1, at 5 ¶ 27, at 6 ¶ 32. Plaintiff alleges that Fazenbaker's investigation into the claims of discrimination and harassment—presumably those lodged *against* her, as she contends that they were used as the pretext for "adverse action against her"—was simply a method to "suppress Plaintiff's [own] complaints." ECF 19-1, at 6–7 ¶¶ 32–34. This allegation permits the inference that Fazenbaker was aware of Plaintiff's protected activity. *See Wilson v. Nat'l R.R. Passenger Corp.*, Civ. No. JRR-22-2884, 2025 WL 885836, at *14 (D. Md. Mar. 20, 2025) ("In the Fourth Circuit, a causal relationship between protected activity and adverse action requires 'proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim,' meaning that 'the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred.'" (quoting *Roberts*, 998 F.3d at 124)). Because the PAC includes additional facts giving rise to a new, necessary inference, Plaintiff is permitted leave to amend as to this claim. *See Jones v. Mazda Fin. Servs.*, Civ. No. BAH-25-1090, 2026 WL 1256281, at *4 (D. Md. May 7, 2026) (applying a lenient standard in granting leave to amend to "give[ ] effect to the federal policy in favor of resolving cases on their merits" (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (alteration in original))).

c. *Amendment of the Discriminatory Hiring Claim Would Be Futile (PAC Count III)*

The Court determined that dismissal of this claim in the original complaint was appropriate because of Plaintiff's failure to satisfy the fourth element of a claim of discriminatory hiring, which requires a plaintiff to show that "after [the plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." *Sears Roebuck & Co.*, 243 F.3d at 851. In particular the Court determined that Plaintiff failed to show that she "was not hired . . . 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 851 n.2 (quoting *Burdine*, 450 U.S. at 253). The PAC does not cure this deficiency.[15]

A plaintiff may satisfy the fourth element by showing that following their rejection from a role, the employer "continued to seek to fill it" and ultimately did so by hiring a less qualified individual outside of the plaintiff's protected class. *See Sears Robuck & Co.*, 243 F.3d at 851. Although Plaintiff's allegations do not address whether there was any delay between her rejection and the position being filled, she does contend that "[t]he position was ultimately filled by a younger, less experienced employee." ECF 19-1, at 8 ¶ 44. Since Plaintiff failed to allege her own age and race, and also omitted allegations regarding the sex, age, and race of the person who ultimately received the People Lead role, this allegation does not immediately appear to state that someone outside of Plaintiff's protected class received the position. *See generally* ECF 19-1. The Court observes that since Plaintiff did allege that the person who received the role was "younger" and, as the MFEPA does not impose an age limit for age discrimination claims, *see* Md. Code Ann. State Gov't § 20-606(a)(1)(i), this allegation

[15] To the extent Plaintiff seeks to base her discriminatory hiring claim on the allegation that the failure to rehire was retaliatory, *see* ECF 19-1, at 12 ¶ 72, that claim is duplicative of her retaliation claim, which the Court is permitting her to amend. *See* ECF 19-1, at 11 ¶ 63 (alleging that Defendants' retaliatory acts include "interference with advancement" and "refusal to hire or promote").

may give rise to the inference that the recipient of the job was outside of Plaintiff's protected class as someone of a different age. However, "[a]s the Fourth Circuit has held, a discrimination claim that 'alleges nothing more than she was denied a position or promotion in favor of someone outside her protected class' is not sufficiently pled." *Dinh v. Vidal*, No. 1:23-cv-201 (MSN/LRV), 2024 WL 7139740, at *5 (E.D. Va. Mar. 11, 2024) (quoting *McCleary-Evans*, 780 F.3d at 588); *see also Tambedou v. Fundamental Clinical & Operational Servs., LLC*, Civ. No. DKC-19-2822, 2020 WL 5544199, at *4 (D. Md. Sep. 16, 2020) ("Simply asserting that a Caucasian candidate was selected for a role over an individual within a protected class, without any facts indicating discrimination, cannot support a claim of intentional discrimination. Such an allegation 'is simply too conclusory' because 'only speculation can fill the gaps in [plaintiff's] complaint.'" (quoting *McCleary-Evans*, 780 F.3d at 586)).

Additionally, although Plaintiff added the allegation that Fazenbaker initially told her the People Lead position was filled when it was in fact still available, Plaintiff was still permitted to interview for the position six days later, and she alleged no facts tending to show that the initial incorrect communication was due to her sex, race, or age. *See* ECF 19-1, at 12 ¶ 71. Amendment of this claim would be futile, and leave to amend is accordingly denied.

*d. Plaintiff Is Permitted to Amend Her Negligence Claims (PAC Counts IV–V)*

The Court rested its dismissal of Plaintiff's negligence claims on her failure to plead any tortious conduct that was distinct from Defendants' alleged statutory violations. *See supra* Section III.A.2. The PAC pleads a distinct duty and breach related to Defendants' internal "Global Ethics and Compliance standards." ECF 19-1, at 13 ¶ 77; *see also Evans v. Maryland-National Capital Parks & Planning Comm'n*, Civ. No. MJM-19-2651, 2023 WL 3328002, at *30 (D. Md. Mar. 31, 2023) ("At common law, an employer owed its employees, *inter alia*, the following duties: 'to provide a safe workplace; . . . [and] to promulgate and enforce rules

governing employee conduct for the purpose of enhancing safety." (quotations omitted) (quoting *Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. at 750)). Because Plaintiff alleges a distinct legal theory of negligence, amendment of these claims is permitted to allow her to test the claims on their merits.

*e. Plaintiff Is Not Permitted to Add the Tortious Interference Claim (PAC Count VI)*

The PAC seeks to add a new cause of action asserted against Fazenbaker alone. ECF 19-1, at 14–15 ¶¶ 83–88. This claim may not be added since the Court declined to permit joinder of Fazenbaker as a defendant. *See supra* Section III.B.1.

*f. Amendment of the Defamation and False Light Claims Would Be Futile (PAC Counts VII–VIII)*

The Court found that Plaintiff's claims of defamation and false light are subject to dismissal because Defendants enjoy a qualified privilege related to the employer-employee relationship, and because Plaintiff failed to plead the alleged acts of defamation with specificity. *See supra* Section III.A.3. The PAC does not cure those deficiencies, and amendment as to these counts therefore will not be permitted.

Plaintiff attempts to sidestep the applicability of Defendants' qualified privilege by alleging that "Defendants made these false statements with knowledge of falsity or reckless disregard for truth, sufficient to defeat any qualified privilege defense." ECF 19-1, at 16 ¶ 93; *see also Salisbury Univ.*, 123 F. Supp. 3d at 758 ("Once a conditional privilege has been identified, a plaintiff's defamation claim will only survive if he can show that the defendant acted with malice, 'defined as a person's actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement.'" (alteration in original) (cleaned up) (quoting *Piscatelli*, 35 A.3d at 1148)). The bare legal conclusion contained in the PAC is not sufficient to cure the pleading deficiency identified *supra*, Section III.A.3, and Plaintiff has adduced no facts in support of this assertion, *see generally* ECF 19-1.

Moreover, the PAC still contains "no specific description of the content of the alleged statements, nor when and how they were communicated" and therefore "cannot plausibly support an actionable defamation claim[.]"[16] *Brown*, 2012 WL 6185310, at *3. Leave to amend as to these claims is accordingly denied.

**C. Motion to Remand**

Plaintiff argues that her proposed amendments divest this Court of jurisdiction such that remand to state court is proper. ECF 11, at 2 ¶ 5. Plaintiff premised this motion on her purported "Amended Complaint," which she filed in this Court outside of the time period when amendment as a matter of course is permitted, and without leave. *See id.*; *see also* ECF 17, at 3 n.2 (noting that Plaintiff filed her purported amended complaint 28 days after service of Defendants' motion to dismiss); Fed. R. Civ. P. 15(a) (permitting amendment as a matter of course "21 days after service of a motion under Rule 12(b)"). Regardless, largely for the purpose of promoting of judicial economy, the Court will construe this request as a motion to remand the PAC.

The PAC, once implemented as the operative pleading in this case in the limited manner permitted by this opinion, will not divest the Court of diversity jurisdiction. Because the Court declined to permit joinder of Plaintiff's proposed nondiverse defendant, complete diversity will not be destroyed. *See supra* Section III.B.1. Moreover, Plaintiff does not contest that at the time of removal she sought damages in excess of $100,000. *See* ECF 1, at 3 ¶ 11 ("Based on the Complaint's express demand for damages totaling over $100,000, the amount in

[16] The Court notes that the PAC contains internal contradictions as well. *Compare* ECF 19-1, at 15 ¶ 90 (alleging that the "'Code Orange' designation . . . was placed on Plaintiff's worker profile and persisted beyond her resignation date, and was accessed or relied upon in connection with the refusal to hire or promote Plaintiff"), *with id.* at 7 ¶ 36 (alleging that Plaintiff "had never been formally coded with a Code Orange designation in Walmart's official disciplinary system"). This does not alter the Court's conclusion that Plaintiff has failed to plead the elements of a defamation or false light claim, but Plaintiff is advised to carefully review her future submissions to the Court to avoid inadvertent misrepresentations.

controversy in this matter exceeds the sum or value of $75,000, exclusive of interests and costs."). Instead, she argues that her "express $74,000 damages cap against Walmart Inc. places the amount in controversy below the jurisdictional threshold as to the corporate defendant."[17] ECF 11, at 2–3 ¶ 6. However, "the amount in controversy for jurisdictional purposes is determined at the time of removal." *Ross v. Mayor & City Council of Balt.*, No. ELH-14-369, 2014 WL 2860580, at *5 (D. Md. June 20, 2014) (citing *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008)). Plaintiff therefore cannot "deprive Defendants of [their] right properly to remove the case to federal court by amending the damages [she] seek[s] post-removal." *Eremah v. Assurity Life Ins. Co.*, Civ. No. DKC-20-2069, 2020 WL 6544833, at *7 (D. Md. Nov. 6, 2020); *see also Warren v. Walmart, Inc.*, Civ. No. PWG-20-2460, 2021 WL 8316264, at *2 (D. Md. July 16, 2021) (determining that plaintiff's post-removal "reduction of the amount in controversy did not destroy jurisdiction" such that "remand for lack of subject-matter jurisdiction [wa]s not warranted"). The Court therefore retains jurisdiction and the motion to remand will be denied.

---

[17] Plaintiff's alternative argument that her proposed amendments "remove[] all federal claims and assert[] only state-law causes of action" such that remand is warranted under *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) is unavailing. ECF 11, at 2 ¶¶ 3, 5. The Supreme Court held in *Wullschleger* that "[w]hen an amendment excises the federal-law claims that enabled removal, the federal court loses its supplemental jurisdiction over the related state-law claims." 604 U.S. at 25–26. Plaintiff's original complaint, in contrast, did not assert any federal law claims (rendering meaningless her claim that she "remove[d] all federal claims" ECF 11, at 2 ¶ 5), and this Court's jurisdiction over the removed complaint does not turn on supplemental jurisdiction, but rather diversity jurisdiction. *See Mack v. Md. Dep't of Hum. Res.*, Civ. No. DLB-23-1577, 2026 WL 1532974, at *3 n.5 (D. Md. June 1, 2026) (noting that the court retained jurisdiction over an amended complaint that omitted federal law claims because it "still ha[d] diversity jurisdiction" (citing *Wullschleger*, 604 U.S. at 44)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, Plaintiff's motion for leave to amend is **GRANTED** in part and **DENIED** in part, and Plaintiff's motion to remand is **DENIED**. A separate implementing Order will issue.

Dated: November 23, 2026

/s/
Brendan A. Hurson
United States District Judge